Robert O. Brink, J.
This is a proceeding brought under article 78 of the CPLR to review a determination of the State Liquor Authority whereby it approved petitioner’s application for a hotel liquor license for premises located at 2-8 Hawley Street, Binghamton, New York, subject to certain specific conditions. These conditions, upon which petitioner bases its objection to the approval, required that petitioner eliminate the exit from the parking lot of the hotel, facing on Stuart Street, and that the walkway and driveway connecting the banquet entrance (parking lot) and Stuart Street be eliminated, on the ground that the distance from the sidewalk leading to the door of a nearby church to the point where the parking lot of the hotel meets the adjoining sidewalk measured less than 200 feet. The authority imposed the conditions even though the church had no objection to the hotel parking lot exit on Stuart Street being open for traffic, and even though approval of the application was unconditionally recommended by the Broome County Alcoholic Beverage Control Board (letter and affidavit of Rev. Paul S. Sherman in petitioner’s moving papers and “ Broome County A. B. C. Board Digest,” respondent’s Exhibit IV).
Petitioner, a general partnership, filed its application for a hotel license on May 14,1969 with the Broome County Alcoholic Beverage Control Board. The local board approved the application on June 16, 1969, subject only to a ruling by the State Liquor Authority on the matter of one of the general partners being a limited partnership.
The licensee’s application for a hotel license was approved on August 21, 1969, subject to compliance with certain conditions, including as item number 6, “ The elimination of the walkway and driveway connecting the banquet entrance and Stuart Street.” The licensee complied with condition 6 by erecting a temporary fence closing off the walkway and driveway from Stuart Street, whereupon the authority issued the license. It appears that condition 6 was imposed because of the proximity of the Christian Missionary Alliance Church, located at 73 Washington Street, Binghamton. The side door of this church faces on Stuart Street opposite from the hotel exit in question.
*628 Exhibit VII-B of respondent’s papers includes a letter dated' August 18, 1969, from the Binghamton Urban Renewal Agency to Mrs. Cecilia Mulford, Executive Officer of the Broome County Alcoholic Beverage Control Board. In this letter, the agency informed the board that it holds an option for the purchase of the land upon which the church is located, for reuse either as part of the proposed County Performing Arts Theater, or for some other commercial purpose.
The hotel is also part of the extensive Binghamton Urban Renewal Project and its design, driveways, walkways and parking facilities were planned and constructed in conjunction therewith.
The main entrance of the hotel is located on Hawley Street, a busy commercial thoroughfare, separated by a concrete divider, and broken by various curb cuts. A curb cut exists at the entrance to the hotel driveway, permitting access to the hotel parking lot and to a banquet room entrance on the boundary of the lot. Vehicles enter this driveway from Hawley Street, and, except for the conditions mentioned, would proceed to exit on Stuart Street or enter the hotel parking lot. The only planned exit for the hotel driveway was to be Stuart Street, as it has little traffic. By closing off the ’Stuart Street exit, the cars must now exit back onto the busier Hawley Street.
The Christian Missionary Alliance Church has three doors: the main entrance facing on Washington Street, a side door facing on Stuart Street, and a rear door. The front entrance is the only entrance of the church regularly used to give ingress to the general public attending services. The side door, which is kept locked from the inside, is used as an emergency exit and for maintenance purposes, and the rear door serves only as an emergency or fire exit.
At the time the plans for the hotel were drawn, and up until the building neared completion, the relevant statute required that no retail license for on-premises consumption could be granted for any premises on the same street or avenue and within 200 feet of a building occupied exclusively as a school, church, synagogue or other place of worship. For the purposes of the statute, the measurements were to be taken ‘ ‘ in a straight line ” from the center of the nearest entrance of such school, church, synagogue or other place of worship, to the center of the nearest entrance of the place to be licensed. (Alcoholic Beverage Control Law, § 64, subd. 7.)
Measured by this standard, the nearest entrance to the hotel far exceeded the statutory requirements, regardless of whether *629 the measurement was taken from the side or front door of the church. The distance from the side door to the banquet entrance of the hotel measured 243 feet, and the distance from the front entrance was 293 feet.
On May 10, 1969, at a time when the hotel complex was nearing completion, the afore-mentioned section of the law was amended, and it is this amendment around which this litigation revolves. While retaining the same 200-feet-distance requirement, the section redefined the term “ entrance ” for measurement purposes. (Alcoholic Beverage Control Law, § 64, subd. 7, as amd. by L. 1969, ch. 501.) By interpreting that definition as requiring the measurement of the distance to be made from the point where the sidewalks and walkways leading to the doors of the church to the point where the parking lot of the hotel meets the adjoining sidewalk, the State Liquor Authority established that the distances involved measured less than 200 feet. Rather than mandatorily disapprove petitioner’s license, under the circumstances interpreted by the authority, petitioner’s application was accepted on or about August 21, 1969, subject to compliance with the stated conditions.
Petitioner contends that the determination of the authority in imposing condition number 6 on its license should be declared null and void because of errors made by the authority in applying the statute, and because the conditions imposed by the authority are not reasonable under the circumstances.
Respondent contends that the issuance of the license with the conditions imposed is a valid and proper exercise of the broad discretion vested in the authority by law in the issuance of licenses. Respondent contends further that petitioner, having accepted its license with the conditions imposed, and having operated thereunder, cannot be allowed to complain at this late date of the conditions imposed. Respondent also contends that because the license was approved and the conditions accepted, this action is not one which can be reviewed under section 121 of the Alcoholic Beverage Control Law which sets forth the actions of the State Liquor Authority which are subject to review by the Supreme Court in the manner provided in article 78 of the CPLR.
The authority is correct in noting that in exercising its power to issue or refusing to issue licenses or permits it is vested with broad discretionary power. Consequently, the courts uniformly hesitate to intervene with the determinations of such a board, but do so only when a board or agency acts in a manner which is arbitrary or unreasonable in light of the circumstances.
*630 Nevertheless, there are several difficulties with respondent’s contentions. Even assuming that the petitioner cannot litigate the .reasonableness of the restrictions imposed on its license in an article 78 proceeding, the petitioner is entitled to a determination in this proceeding by virtue of CPLR. 103 (subd. [c]).
That section provides: “ If a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution.” Hence, this court can properly treat petitioner’s action as one brought for a declaratory judgment. (See 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 103.08 and 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3001.06j.)
Likewise, the fact that petitioner has operated under the conditions imposed should not be a bar to a determination by this court. In Playboy Club v. Hostetter, a condition imposed by the respondent authority was reviewed and annulled in an action brought for a declaratory judgment even though the petitioner had been operating under the condition at the time of the action. (Playboy Club v. Hostetter, 40 Misc 2d 449, affd. 19 A D 2d 822, affd. without opn. 14 N Y 2d 933.)
To hold otherwise, would ignore the practicality of the situation faced by the petitioner when notice of the condition was received on August 21, 1969. By that date, the construction of the hotel had advanced to the point where the only practicable solution for petitioner was to accept the license with the conditions imposed and seek a reconsideration by the authority.
Within one month of the granting of the license with the conditions imposed, a review of these conditions was sought by petitioner and granted by D. S. Hostetter, Chairman of the respondent State Liquor Authority. Upon receipt of notice on November 7, 1969 that the authority had adhered to its original determination, after a reconsideration of the matter, petitioner commenced this proceeding within the period permitted by law to review the reasonableness of the conditions imposed.
It appears to this court that the respondent authority made some fundamental errors in applying the relevant statute under the facts of this case. The 1969 amendment to subdivision 7 of .section 64 of the Alcoholic Beverage Control Law reads as follows: ‘1 Within the context of this subdivision, the word ‘ entrance ’ shall mean a door of a school, of a house of worship, or of the premises sought to be licensed, regularly used to give ingress to students of the school, to the general public attending the place of worshin. and to natrons or guests of the *631 premises proposed to be licensed, except that where a school or house of worship is set back from a public thoroughfare, the walkway or stairs leading to any such door shall be deemed an entrance; and the measurement shall be ¡taken from the center of the walkway or stairs at the point where it meets the building line or public thoroughfare. A door which has no exterior hardware, or which is used solely as an emergency or fire exit, or for maintenance purposes, or which leads directly to a part of a building not regularly used by the general public for patrons, is not deemed an ‘ entrance ’.”
It is clear that the respondent authority deemed that the entrance measurement should be made from the exit to the driveway and the sidewalk adjacent to the driveway exit of the hotel, to the point where it meets the sidewalk of the church door facing on Stuart Street. (See respondent’s Exhibit XI, affidavit of Deputy Commissioner Lewis.) The reply affidavit of the Rev. Paul Sherman states that the Stuart Street door of the building is used only as an emergency and maintenance exit and is not used to gain access to the building. Rev. Sherman further notes that the only public entrance to the church is the front or Washington Street entrance. The above statute clearly excludes from the definition of an entrance, a door “which is used solely as an emergency or fire exit, or for maintenance purposes, or which leads directly to a part of a building not regularly used by the general public or patrons ”. Hence, in not taking the measurement from the front or Washington Street entrance of the building, the respondent authority was in error.
The authority has also taken the position, in construing the recent amendment, that the measurement to be taken from where a walkway meets the public thoroughfare, applies to the licensed premises as well as to a school or house of worship. While this is a possible interpretation of the statute, a careful reading of the exception clause shows that more likely, it is the walkway only of the church end of the measurement line that is' to be taken as a starting point, not a walkway leading to the door of the premises to be licensed.
The exception clause includes only a school or house of worship when establishing a starting point of the line of measurement as the “ center of the walkway or stairs at the point where it meets the building line or public thoroughfare.” If the amendment was also intended to include the walkway leading to the licensed premises, it is reasonable to assume that it would have included a phrase similar to “ the premises sought to be licensed,” as it does when it earlier defines the term *632 “ entrance ”. Therefore, it appears that only by the use of a strained construction can the addition of “ premises sought to be licensed ’ ’ be read into the exception clause.
Notwithstanding the difficulties of statutory construction, a reading 'of the first clause in subdivision 7 shows that the 200-feet-distance requirement has no application to the case at bar. For that proscription to apply, the premises sought to be licensed must be “ on the .same street or avenue ”. There is no argument that the Treadway entrance is located on Hawley Street (see the fifth paragraph of respondent’s answer), and the church entrance by definition is on Washington Street, which runs perpendicular to, and is not a part of, either Hawley or Stuart Street. There are no sidewalks, driveways or other entrances running from Washington Street to the hotel premises in question.
Since the only entrance to the church faces on Washington Street, and the hotel entrance faces on Hawley Street with the proposed exit on Stuart Street, disapproval by the authority was not mandatory under subdivision 7 of section 64 and disapproval for this reason was error. (Matter of Surface Line Operators Fraternal Organization v. New York State Liq. Auth. 25 A D 2d 775, mot. for lv. to app. den. 17 N Y 2d 425. Matter of Galaxy Coffee Shop v. Hostetter 32 A D 2d 946.)
Thus, in view of the errors of the respondent authority in applying the statute in question, and noting the difficulty the petitioner has encountered while operating under the limits of condition 6, it is the opinion of this court that the authority has acted in an arbitrary and unreasonable manner in requiring the closing of the Stuart Street exit from the hotel. The determination of the authority in imposing condition 6 to petitioner’s license should be declared null and void and the New York State Liquor Authority is hereby directed to issue a hotel liquor license without the limitations of condition 6 as provided in the original license.